IN THE MATTER OF THE ADOPTION OF D.J.M.

CA 91-396                                              839 S.W.2d 535

Court of Appeals of Arkansas
Division II
Opinion delivered October 21, 1992
[Rehearing denied November 25, 1992.]

*Mapels & Reed*, by: *Cheryl K. Maples*, for appellant.

*William H. McKimm*, for appellee.

ELIZABETH W. DANIELSON, Judge. The appellant in this case, Jett Paul, is the biological father of D.J.M., a minor. On May 22, 1991, the Montgomery County Probate Court granted a petition for adoption of D.J.M. that was filed by Johnny and Murphia Moore, the appellees herein. Appellant was a party to the adoption proceeding below and now seeks to have the decree set aside.

D.J.M. was born on July 10, 1987. Her biological parents were not married. The biological mother consented to the adoption of the child by the Moores, who took D.J.M. home with them the day after she was born. At that time, the identity of the natural father was unknown to the Moores.

A review of the procedural history of the case is necessary given the issues on appeal. The Moores first filed their petition for adoption in Pulaski County Probate, and an interlocutory decree of adoption was entered in October 1987. In January 1988, appellant filed a paternity action in the County Court of Pulaski County, by which he sought to have himself established as the natural father of D.J.M. The interlocutory decree of adoption from Pulaski County Probate became final in April 1988. In May 1988, the final decree was set aside and the interlocutory decree reinstated during pendency of the paternity action. In July 1988, the county court found Jett Paul to be the natural father of D.J.M. While the paternity matter was on appeal, the Moores dismissed their adoption petition in Pulaski County Probate and refiled in Montgomery County Probate in August 1989. The Moores and D.J.M. have lived in Montgomery County at all times pertinent to this appeal.

In March 1990, an order was entered by the Eighth Division Chancery Court of Pulaski County finding Jett Paul to be the

natural father of D.J.M. In May 1991, the Montgomery County Probate Court entered the adoption decree that is the subject of this appeal.

Appellant's first argument is that the Montgomery County Probate Court lacked subject matter jurisdiction over the adoption matter and that the order of adoption is therefore void. As support for his argument, appellant cites Ark. Code Ann. § 9-27-306 (Repl. 1991), which states in pertinent part:

> (a) The juvenile court shall have exclusive original jurisdiction of and shall be the sole court for the following proceedings governed by this subchapter:
>
> (3) Proceedings for establishment of paternity . . . .
>
> (b) The juvenile court shall have exclusive jurisdiction of the following matters governed by other law which arise during pendency of original proceedings under subsection (a) of this section and involve the same juvenile.
>
> (1) Adoptions under the Revised Uniform Adoption Act, as amended, § 9-9-201 et seq.

Appellant argues that because the paternity proceeding was on appeal to the juvenile court when the adoption petition was filed in Montgomery County Probate, the adoption matter should have been heard in the juvenile court in Pulaski County along with the paternity matter. At the trial below, appellant never sought to have the adoption matter transferred to juvenile court nor did he object to the probate court's jurisdiction over the matter.

Subject matter jurisdiction of adoption proceedings has been vested in the probate court by statute. *See* Ark. Code Ann. § 28-1-104(a)(5) (1987) and *Poe* v. *Case*, 263 Ark. 488, 565 S.W.2d 612 (1978). While we agree that under the provisions of § 9-27-306(b)(1) the adoption matter should have been filed in or transferred to juvenile court, we do not agree that § 9-27-306 operated to oust from the probate court subject matter jurisdiction of the adoption proceeding so that the judgment was void. In *Banning* v. *State*, 22 Ark. App. 144, 737 S.W.2d 167 (1987), we stated:

> The rule of almost universal application is that there is a

distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exercised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case. If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. . . . Failure to follow the statutory procedure in the exercise of its power constitutes reversible error but does not oust the jurisdiction of the court.

22 Ark. App. 144 at 149. The supreme court has said that unless the trial court has no tenable nexus whatever to the claim in question, the appellate court will consider the issue of whether the claim should have been heard there to be one of propriety rather than subject matter jurisdiction. Where the issue is one of propriety, the appellate court will not raise the issue *sua sponte*, and will not permit a party to raise it unless it was raised in the trial court. *Horne Brothers, Inc.* v. *Ray Lewis Corp.*, 292 Ark. 477, 731 S.W.2d 190 (1987), citing *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986).

██ Because it certainly cannot be said that the probate court has "no tenable nexus" to adoption matters, we consider the issue of whether the Montgomery County Probate Court should have exercised jurisdiction in this instance to be one of propriety, not one of the existence of subject matter jurisdiction. The probate court's failure to transfer the case to the juvenile court was but an irregularity in proceedings to which appellant failed to object. While the failure to transfer would constitute reversible error had appellant objected or brought it to the court's attention, the court was not acting without jurisdiction in hearing the matter. Appellant's failure to request a transfer of the case or otherwise question the propriety of the probate court hearing the case waived the issue and it may not be raised for the first time on appeal.

Appellant's second argument on appeal is that the probate

court erred in finding that appellant's consent was not necessary and in finding that appellant had failed without justifiable cause to contact or support his minor child for a period of at least one year. *See* Ark. Code Ann. § 9-9-207(a)(2) (Repl. 1991). Appellant argues that because the interlocutory decree of adoption was in effect prior to the filing in Montgomery County, he was precluded from communicating with or providing for the care and support of his minor child. At the time of the hearing, the child was 3½ years old and had been with the Moores since her birth. The judge noted that appellant's mother testified that she had known of the adoption proceedings since September 1987. Appellant admitted that during those 3½ years he had never seen nor attempted to see the child. He also admitted he had not attempted to communicate with or support her in any way. Although he filed a paternity action, he never requested visitation with the child in the juvenile court or in any other court. Appellant suggested that fraud was perpetrated upon him in the adoption matter, but never challenged the interlocutory decree on these grounds.

Although we review probate proceedings *de novo* on the record, it is well settled that the decision of a probate judge will not be disturbed unless it is clearly erroneous. In making that determination, we give due regard to the opportunity and superior position of the trial judge to judge the credibility of the witnesses. *In the Matter of the Adoption of Titsworth*, 11 Ark. App. 197, 669 S.W.2d 8 (1984). The probate judge stated that the mere existence of an interlocutory decree of adoption would not operate to prevent the father from attempting to see his child and to support her in some manner. Under the particular circumstances of this case, we cannot say the probate judge erred in finding appellant's consent was not necessary because he had failed significantly without justifiable cause to communicate with the child or to provide for the care and support of the child for a period of at least one year.

Appellant's third argument is that the probate court violated his constitutional right to due process in its finding that custody of the minor child should lie with the adopting parents in the event the adoption was overturned. Since we are affirming the adoption, we need not address this argument.

122

Affirmed.

JENNINGS and MAYFIELD, JJ., agree.